UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

HERICO ANDRADE,                    )
                                   )
          Petitioner               )
                                   )
v.                                 )     CIVIL ACTION NO.
                                   )     20-10733-DPW
SUPERINTENDENT SEAN MEDEIROS,      )
                                   )
          Respondent.              )


MEMORANDUM AND ORDER
September 9, 2021

     This federal habeas corpus petition under 28 U.S.C.

§ 2254 arises from the June 2015 state court conviction of

Herico Andrade for first degree murder.  During Mr. Andrade's

trial, the prosecutor successfully introduced grand jury

testimony as prior inconsistent statements for several witnesses

who the judge determined to be feigning memory loss.  The

prosecutor used leading questions to present and inquire about

the grand jury testimony, but the trial court rejected Mr.

Andrade's argument that this questioning technique was improper.

After the Massachusetts Supreme Judicial Court affirmed his

conviction, Mr. Andrade sought relief through a writ of habeas

corpus in this Court.

     Mr. Andrade contends that by allowing the grand jury

testimony to be considered as substantive evidence, the trial

court created an unforeseeable exception to a state common-law

rule and retroactively applied that newly fashioned exception to his case, in violation of his due process rights under the Fifth Amendment and his Confrontation Clause rights under the Sixth Amendment, as made applicable to state courts by the Fourteenth Amendment of the United States Constitution.  The Respondent custodian, the Superintendent of the Massachusetts Correctional Institution at Norfolk, has moved for judgment on the pleadings, arguing that the underlying claims have not been exhausted in the state courts, have been procedurally defaulted, and in any event fail on the merits.  I conclude that Mr. Andrade has not met the demanding burden required of state habeas corpus petitions and consequently will grant Respondent's motion.

## I. BACKGROUND

### A.    *Factual Background*

In a federal habeas corpus proceeding challenging a state conviction, state court determinations of fact are presumed to be correct, and the petitioner has the burden of rebutting that presumption by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1).  Mr. Andrade disputes what he contends were three determinations of fact adopted by the SJC.  I note those instances in footnotes below and find them procedurally defaulted and thus immaterial to the substantive merits of petitioner's claims.  *See infra* notes 2, 3 & 4.

On April 4, 2011, a vehicle carrying Mr. Andrade and others stopped in front of a house in Brockton, where several people were gathered.  One of the men standing outside approached the car and argued with Mr. Andrade.  Mr. Andrade said, "I'll go and come back," and the vehicle pulled away.  About thirty-three minutes later, shots were fired in the same location.  The victim, Jose Lobo, was found lying on the front porch with a gunshot wound to his head.  He was pronounced dead at the hospital.

Surveillance video showed two individuals approaching the area on foot and reaching for their waistbands around the time of the shooting; the video then showed the individuals fleeing the scene moments later.  A witness, Antonio Silva, saw two individuals running away from the scene, one of whom he identified as Mr. Andrade.  Mr. Silva also noted that Mr. Andrade carried a revolver while running away.  A baseball hat containing Mr. Andrade's DNA was found on the street in front of the porch where Mr. Lobo was killed.

Mr. Andrade was questioned by Brockton police a few days after the murder.  During that interview, he admitted to being a passenger in the vehicle that stopped near the group on the night of the shooting, but he denied being present at the time of the shooting.  Approximately one and a half weeks later, Mr.

Andrade left the United States.  He was indicted for murder and arrested when he returned to the country, almost a year later.

**B.    *Procedural History***

1.   Trial

At trial, four witnesses called by the Commonwealth claimed that they could not remember testimony they had given to the grand jury.  The judge found that three of the witnesses, including Mr. Silva, were feigning memory loss.[1]  Consequently, the judge allowed the Commonwealth to introduce grand jury testimony by the three witnesses as admissible prior inconsistent statements that could be considered substantively.

When reading the grand jury testimony into the record, the prosecutor presented the relevant excerpts punctuated by live questions to the witness about whether he or she recalled giving that portion of the testimony.[2]  Mr. Andrade did not object to this questioning technique while it was happening, but at the

---

[1] As to the fourth witness, the Judge found that given certain problems with the witness's comprehension of the English language at the time his grand jury testimony occurred, the record of his grand jury testimony did not reliably reflect what he heard and understood from the questions he was asked.
[2] Mr. Andrade disputes this characterization of the prosecutor's questioning technique as an unreasonable determination of fact. He argues that because the grand jury testimony was read along with the leading questions, the grand jury testimony cannot be separated from the questions.  I do not reach the merits of this claim because it has been procedurally defaulted.  S*ee infra* Section III.B.  Consequently, I make no finding as to the reasonableness of this factual determination by the SJC.

close of evidence he moved for a required finding of not guilty. He argued that under common law, the prosecutor's leading questions could not be considered as substantive evidence, and therefore there was insufficient evidence to find him guilty.

The trial judge denied Mr. Andrade's motion, finding that the prosecutor's method of questioning was "sufficient" to allow the jury to consider the grand jury testimony substantively. The judge instructed the jury that questions put to witnesses were not separately evidence but that the grand jury testimony actually given by each witness framed by those questions could be considered for its substantive value.

2.   SJC Appeal and Petition for Rehearing

On appeal to the SJC, Mr. Andrade argued that the trial court judge erred in treating the grand jury testimony as substantive evidence and instructing the jury to do the same, citing for the first time *Commonwealth* v. *Judge*, 650 N.E.2d 1242, 1254 n.12 (Mass. 1995) (upholding jury instruction that facts suggested in leading questions answered in the negative are not evidence). The SJC on December 21, 2018 held that because Mr. Andrade did not object during the prosecutor's questioning, he failed to preserve his claim.[3]  *Commonwealth* v.

_____

[3] Mr. Andrade argues that the SJC's finding that he "waived his right not to be convicted on suggestions in leading questions that were incapable of producing evidence under existing law" is an unreasonable determination of the fact.  As discussed below

*Andrade*, 113 N.E.3d 317, 320 & n. 2 (Mass. 2018).  As a result, the SJC only reviewed Mr. Andrade's claims for a substantial likelihood of a miscarriage of justice.  *Id.*  The SJC concluded that "although the method the Commonwealth used to introduce the evidence was somewhat unusual, the testimony was properly admitted for substantive purposes.  There was no error."  *Id.*; *see also id.* at 322 ("prosecutor's method was unconventional").

After concluding that the requirements for establishing a prior inconsistent statement had been met, the SJC noted that "[i]t would have been apparent to the jurors at the time, as it is apparent to us now, that the prosecutor was reading relevant excerpts from grand jury testimony into the record, and occasionally asking each witness whether he or she recalled the testimony."[4]  *Id.*  Therefore, the SJC concluded the trial judge did not err, and the grand jury testimony was properly admitted as substantive evidence.  The SJC nevertheless cautioned about what it perceived to be possible confusion caused by this technique and recommended that parties read testimony directly

---

in Section III.B, I disagree because this determination regarding waiver was essentially a determination of the legal issue of procedural default.

[4] Mr. Andrade argues that the SJC's use of the word "occasionally" here is an unreasonable determination of fact, because the prosecutor asked such questions one hundred times. I do not reach the merits of this claim because it also was procedurally defaulted.  Consequently, I make no finding as to the reasonableness of this factual determination by the SJC.

into the record in the future.  *Id.*  The SJC in its opinion also
rejected a Confrontation Clause claim raised by Mr. Andrade.
*Id.* at 321.

Mr. Andrade timely petitioned the SJC for rehearing,
arguing that by allowing the admission of the grand jury
testimony for substantive purposes, the trial court created an
exception to the common-law rule reflected in the *Judge*
footnote, 650 N.E.2d at 1254 n. 12, that leading questions are
not evidence.  In addition, he claimed that the prosecutor's
method of questioning prevented defense counsel from conducting
an effective cross-examination of the witnesses.  The SJC denied
the petition for rehearing without issuing an additional
opinion.

### 3.   Habeas Corpus Petition

Mr. Andrade filed this petition for habeas corpus in this
Court under 28 U.S.C. § 2254 on April 14, 2020.  He contends
that by allowing the grand jury testimony to be considered as
substantive evidence, the trial court improperly altered
retroactively the common law rule recognized by the footnote in
*Judge* and that this was contrary to clearly established federal
law.  *See Rogers* v. *Tennessee*, 532 U.S. 451, 462 (2001)
(concluding that retroactive application of alteration of common
law rule violates due process when "unexpected and indefensible
by reference to the law which had been expressed prior to the

7

conduct in issue"); *Bouie* v. *City of Columbia*, 378 U.S. 347, 354 (1964) (holding that retroactive application of unforeseeable judicial construction of criminal statute violates Due Process Clause).[5]  He also claims that the prosecutor's leading questions about the grand jury testimony violated his Sixth Amendment Confrontation Clause right to cross-examine the witnesses.

Respondent for his part moves for judgment on the pleadings, arguing that Mr. Andrade has failed to exhaust his improper retroactivity claim and that the SJC determined that there was procedural default, which would bar review on the merits in federal court as an adequate and independent state law ground.  Most fundamentally, Respondent maintains that the retroactivity claim fails on the merits because the SJC reasonably applied relevant Supreme Court precedents.

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs federal court review of habeas corpus applications brought by petitioners in state custody.  28 U.S.C. § 2254(d).  Under that statute's "peculiarly deferential standards," I may not grant an application for a writ of habeas unless the adjudication of a claim on the merits in state court

---

[5] The Parties characterize Petitioner's retroactivity contention as a *Bouie* claim, but as an alleged alteration of a common law rule, it is more precisely characterized as a *Rogers* claim.

(1) was contrary to or involved an unreasonable application of clearly established federal law or (2) was based on an unreasonable determination of facts. *Cronin* v. *Comm'r of Prob.*, 783 F.3d 47, 50 (1st Cir. 2015); 28 U.S.C. § 2254(d). This standard presents a demanding burden for state petitioners for federal habeas corpus relief. *See Cooper* v. *Bergeron*, 778 F.3d 294, 299 (1st Cir. 2015).

On the first prong, clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Lockyer* v. *Andrade*, 538 U.S. 63, 71 (2003) (quoting *Williams* v. *Taylor*, 529 U.S. 362, 412 (2000)). To demonstrate that the state court decision was contrary to or an unreasonable application of federal law, a petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington* v. *Richter*, 562 U.S. 86, 103 (2011). In evaluating the reasonableness of a rule's application, a court must "consider[] the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Id.* at 101 (quoting *Yarborough* v. *Alvarado*, 541 U.S. 652, 664 (2004)).

On the second prong, state court determinations of fact are presumed to be correct.  28 U.S.C. § 2254(e).  The petitioner has the burden of rebutting that presumption by clear and convincing evidence.  *Id.*

### III. ANALYSIS

Respondent contends that Mr. Andrade has not exhausted his improper retroactivity claim in the state courts and that the SJC's ruling that there was a procedural default bars federal review of the claim because the decision rests on an independent and adequate state ground.

Although I conclude that Mr. Andrade has exhausted his state remedies for the retroactivity claim, I do not, except in the alternative, need to reach the merits because the SJC ruled adversely to him on an adequate and independent state procedural ground.  In the interests of completeness, however, I address the contentions in the alternative and also find without merit Petitioner's contention that the SJC's determination regarding the retroactivity claim and the SJC's Confrontation Clause holding are unreasonable applications of federal law.

### A.  *Exhaustion*

The exhaustion doctrine requires a petitioner to pursue unsuccessfully in the state courts all available remedies before a federal habeas application can be entertained.  28 U.S.C. § 2254(b)(1); *Rose* v. *Lundy*, 455 U.S. 509, 515–20 (1982).  This

doctrine reflects federalism and comity concerns that "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation."  *Rose*, 455 U.S. at 518 (quoting *Darr* v. *Burford*, 339 U.S. 200, 204 (1950)); *Clements* v. *Maloney*, 485 F.3d 158, 162 (1st Cir. 2007).

A petitioner will be found to have exhausted a federal claim if it was presented "fairly and recognizably" to the state courts.  *Sanchez* v. *Roden*, 753 F.3d 279, 294 (1st Cir. 2014) (quoting *Casella* v. *Clemons*, 207 F.3d 18, 20 (1st Cir. 2000)). A fair and recognizable presentment occurs when the petitioner's state court filings would alert a reasonable state court judge to the existence of a federal claim.  *Id.*  In circumstances where the SJC has reached the merits of the case, but no federal claim was fairly and recognizably presented, a federal claim cannot be raised for the first time in a petition for rehearing. *Gunter* v. *Maloney*, 291 F.3d 74, 81–82 (1st Cir. 2002).

Essentially, "the legal theory [articulated] in the state and federal courts must be the same."  *Sanchez*, 753 F.3d at 294 (alteration in original) (quoting *Clements*, 485 F.3d at 162). But this does not mean that each case cited in the habeas petition must actually have been cited in state court; "[a]s long as the substance of the federal claim is squarely presented

11

to the state tribunal, citation to controlling federal cases is not a prerequisite for purposes of achieving exhaustion." *Rashad* v. *Walsh*, 300 F.3d 27, 41 n.10 (1st Cir. 2002) (finding that petitioner's failure to cite specific case did not preclude exhaustion when petitioner's application for further state appellate review identified speedy trial claim).

A petitioner can fairly present the substance of the federal claim through one of the following methods: "reliance on a specific provision of the Constitution, substantive and conspicuous presentation of a federal constitutional claim, on-point citation to federal constitutional precedents, identification of a particular right specifically guaranteed by the Constitution, and assertion of a state-law claim that is functionally identical to a federal constitutional claim." *Coningford* v. *Rhode Island*, 640 F.3d 478, 482 (1st Cir. 2011). In short, the First Circuit "rules about what constitutes presenting a federal issue are fairly generous." *Goodrich* v. *Hall*, 448 F.3d 45, 47 (1st Cir. 2006).

Mr. Andrade did not specifically cite either *Rogers* v. *Tennessee* or *Bouie* v. *City of Columbia* until this habeas petition. Respondent contends that this means the claim is unexhausted. But in his brief on appeal to the SJC, Mr. Andrade argued that his right to due process under the Fourteenth Amendment to the United States Constitution was violated by the

jury's consideration of the improperly admitted evidence. Although Mr. Andrade did not formulate his argument to the SJC in the same terms or with the precision he now uses — that is, as an unforeseeable judicial interpretation of a state common-law rule — the repeated use of the term "due process," his general discussion of the Fourteenth Amendment, and his citation to another federal case may be read as sufficient to put the SJC on notice of a federal claim of improper retroactivity.

It is also true that Mr. Andrade did not articulate any federal claims as such in his petition to the SJC for rehearing. There, Mr. Andrade argued that the *Judge* exception "cannot equitably be applied to the Petitioner.  There is no way that trial counsel can be reasonably expected to have foreseen this substantive change in controlling law."  He did not in his rehearing petition characterize this as a violation of federal due process rights, nor did he cite to *Rogers*, *Bouie*, or any other federal law.  Respondent contends that this omission in the petition for rehearing means the claim was not properly exhausted.  However, the federal claim had been recognizably presented, if only dimly so, to the SJC in his original review on appeal.  The petition for rehearing was a request for discretionary review by the same court that had already decided the case.  Because the SJC was notified of the federal claim in connection with its original review, I find the improper

retroactivity claim to have been exhausted.  I conclude that for purposes of exhaustion, Mr. Andrade was not required to repeat his federal claim previously made before the SJC in his petition for rehearing.

**B.   *Adequate and Independent State Law Ground***

The Respondent separately argues that I cannot reach the merits of Mr. Andrade's claims because there is an adequate and independent state-law ground for the decision — the SJC's finding that Mr. Andrade procedurally defaulted his retroactivity claim by failing to object in a timely fashion to the prosecution's use of the contested questioning technique to admit substantive evidence at trial.  I agree.

In general, "[f]ederal habeas review of a particular claim is precluded in circumstances in which a state prisoner has defaulted on that claim in state court by virtue of an independent and adequate state procedural rule." *Janosky* v. *St. Amand*, 594 F.3d 39, 44 (1st Cir. 2010); *see Coleman* v. *Thompson*, 501 U.S. 722, 729-32 (1991) (noting that federal courts cannot review state court decisions that rest on an adequate and independent state law ground, because the federal decision would be advisory).  The First Circuit has held "with a regularity bordering on the monotonous" that the Massachusetts contemporaneous objection rule is an adequate and independent state procedural ground that has been consistently applied.

14

*Janosky*, 594 F.3d at 44.  Further, a state appellate court does not waive the contemporaneous objection rule by engaging in a discretionary review of the claim to determine whether a miscarriage of justice has occurred.  *Id.*; *Gunter*, 291 F.3d at 79-80.

That said, a federal court may still review a habeas claim that has been procedurally defaulted if there is cause for and prejudice from the default, or if failure to consider the claim will result in a fundamental miscarriage of justice.  *Janosky*, 594 F.3d at 44, 46; *Gunter*, 291 F.3d at 78.

Cause for a procedural default is found when "the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  *Murray* v. *Carrier*, 477 U.S. 478, 488 (1986); *Lee* v. *Corsini*, 777 F.3d 46, 58-59 (1st Cir. 2015) (quoting *Carrier*, 477 U.S. at 488).  Causes justifying procedural default include that the "legal basis for a claim was not reasonably available to counsel."  *Carrier*, 477 U.S. at 488.  Prejudice from a procedural default is determined by the petitioner showing "not merely that the errors at . . . trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  *Id.* at 494 (quoting *United States* v. *Frady*, 456 U.S. 152, 170 (1982)); *see Janosky*, 594 F.3d at

45.   The cause and prejudice requirement provides a "narrow exception" for a fundamental miscarriage of justice, but this applies only when the petitioner makes a showing of actual innocence.  *Lee*, 777 F.3d at 62 (quoting *Burks* v. *Dubois*, 55 F.3d 712, 717 (1st Cir. 1995)).

The SJC held that Mr. Andrade had procedurally defaulted his claim concerning the prosecutor's questioning by failing to object until the close of evidence.  *Andrade*, 113 N.E.3d at 320 n.2.  Having determined that the claim was procedurally defaulted, the SJC then reviewed the claim to ensure there was no "substantial likelihood of a miscarriage of justice."  *Id.* at 320.  It found that there was no such likelihood.  *Id.*  Thus, "[t]he SJC's ruling amounted to nothing more than a decision that [petitioner] would not be absolved from his procedural default under its miscarriage of justice review."  *Gunter*, 291 F.3d at 79.  Because Massachusetts courts have consistently applied the contemporaneous objection doctrine, *Janosky*, 594 F.3d at 44, this constitutes an adequate and independent state procedural ground — one generally beyond habeas review by a federal court.

Exceptions to the adequate and independent state ground limitation to federal habeas corpus review are not available here.

Mr. Andrade to be sure argues that there was cause for the procedural default.  His trial counsel, he says, could not object in the moment without violating his ethical obligations to Mr. Andrade, because pointing out the leading questions would lead to corrective action by the prosecution to ensure the proper introduction of the substantive evidence, thereby undermining the defense's case.  It is more than a strain to say that Mr. Andrade's counsel could not ethically have alerted the prosecution to the error, assuming that he believed the grand jury testimony was not already in the record substantively.  Treating contemporaneous objection to defective evidentiary submissions capable of correction as an ethical lapse would effectively gut contemporaneous objection rules, an approach no court, least of all the Supreme Court of the United States has even signaled a willingness to undertake.  I cannot conclude that Mr. Andrade has identified a sufficient cause for the default.

Moreover, Mr. Andrade was not prejudiced by any default, because grand jury testimony is, on a proper foundation, admissible substantively as a prior inconsistent statement and there was other corroborating evidence here.  *Andrade*, 113 N.E.3d at 321–22.  If Mr. Andrade had objected at the moment of introduction, the prosecutor could easily have read the testimony into the record in accordance with the SJC'S

suggestion without the interspersed leading questions to the witnesses.[6]  This, of course, is exactly what Mr. Andrade's counsel was seeking to avoid; he did not want the grand jury testimony in the record as substantive evidence at all because that would foreclose his argument that there was insufficient evidence.  But this improvident tactical gambit does not amount to prejudice cognizable in judicial review either directly or indirectly.  A potential avenue to distract attention from the evidence was undertaken by not objecting in the hope no one would notice.  But by failing to object contemporaneously the Petitioner risked the procedural default of the claim on further review.  That the defense was confronted with an unwelcome tactical choice does not allow Mr. Andrade to make an end run around rules of evidence.  Counsel cannot preserve an argument of insufficient evidence by failing to object to the questions when it was clear that the prosecution was attempting to introduce admissible grand jury testimony as substantive evidence.  *Andrade*, 113 N.E.3d at 320 n.2, 322.  Mr. Andrade's limited options simply reflect the interplay among the values

---

[6] The SJC observed that "to avoid confusion when offering grand jury testimony in evidence, we suggest that it be read directly into the record either by one person reading the questions and a colleague reading the answers, or by one person reading the entire excerpt but making clear which portions are questions and which are answers."  *Commonwealth* v. *Andrade*, 113 N.E.3d 317, 322 (Mass. 2018).

served by long-standing rules of evidence that allow substantive admission of a prior inconsistent statement.[7]

Mr. Andrade's citation to *Salts* v. *Epps*, 676 F.3d 468 (5th Cir. 2012), does not convince me otherwise.  In *Salts*, the state court's finding of waiver of objection to joint representation was considered to be an unreasonable determination of fact.  *Id.* at 475.  In the state case, the trial judge did not allow the ineffective assistance claim because of a "recollection" that the defendants had previously waived any objection; however, no evidence supporting this "recollection" appeared in the record. *Id.* at 475-76.  The respondent conceded that the state courts erred on the waiver issue.  *Id.*  Here, Mr. Andrade does not dispute that he did not object at the time; the record plainly shows that he waited until the close of evidence to object.  The only disagreement — the timeliness of the objection — is one of state law.  There is no unreasonable determination of fact because there are no facts in dispute; this is a question of

---

[7] It is no doubt for this reason that the original Advisory Committee Notes to Federal Rule of Evidence 611(c) concerning leading questions, after finding "[a]n almost total unwillingness to reverse for infractions" of the traditional rule that "leading question[s] are as a general proposition undesirable," observe that "[t]he matter clearly falls within the area of control by the judge over the mode and order of interrogation and presentation and accordingly is phrased in words of suggestion rather than command."  Fed. R. Evid. 611(c) 1972 advisory committee's note.   The variety of considerations are summarized in 28 Charles Alan Wright & Victor J. Gold, FEDERAL PRACTICE AND PROCEDURE § 6168 (2d ed. 2012).

state law on which the SJC has — and has already provided — the final say.

Mr. Andrade has not advanced any arguments of actual innocence, so he cannot be excused from procedural default on the basis of a fundamental miscarriage of justice.

Because there is no prejudice cognizable on review from the default and no fundamental miscarriage of justice, I need not review the merits of the underlying claim, which was disposed of by the SJC on an adequate and independent state procedural ground.

## C.   *Due Process and Confrontation*

Although I conclude I need not reach the merits of the improper retroactivity argument in light of the SJC's determination of procedural default, I register in the alternative my conclusion that the improper retroactivity claim is substantively without merit as a due process claim.  For essentially the same reasons, I conclude the SJC determination regarding Mr. Andrade's related Confrontation Clause claim did not constitute an unreasonable application of clearly established federal law.  I will discuss the Confrontation Clause to outline my determination with regard to both constitutional claims.

The Confrontation Clause of the Sixth Amendment guarantees the right of a criminal defendant "to be confronted with the

witnesses against him."  U.S. Const. amend. VI.  This means that a defendant is entitled to cross-examine witnesses against him who seek to offer "testimonial" evidence — including testimony before a grand jury. *Crawford* v. *Washington*, 541 U.S. 36, 68 (2004).  However, "the Confrontation Clause guarantees only 'an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'"  *Kentucky* v. *Stincer*, 482 U.S. 730, 739 (1987) (quoting *Delaware* v. *Fensterer*, 474 U.S. 15, 20 (1985)).  "Ordinarily a witness is regarded as 'subject to cross-examination' when he is placed on the stand, under oath, and responds willingly to questions." *United States* v. *Owens*, 484 U.S. 554, 561 (1988).  A witness's assertion of memory loss does not necessarily create a problem under the Confrontation Clause, because the attorney can still cross-examine the witness on the stand about the witness's recollections.  *Id.* at 560–64; *see, e.g.*, *Figueroa* v. *St. Amand*, No. 09-10943-DJC, 2012 WL 2449906, at *2 (D. Mass. June 26, 2012) (holding that lack of memory did not make witness unavailable for cross-examination under Sixth Amendment).

Mr. Andrade claims that by using a leading question approach to introduce the grand jury testimony, the prosecutor effectively shielded the grand jury testimony from cross-examination, in violation of the Sixth Amendment's Confrontation

Clause.  The SJC rejected this argument, noting that "'any limitation on the effectiveness' of a cross-examination of a witness who has been found to have feigned memory loss 'generally does not implicate the confrontation clause.'" *Andrade*, 113 N.E.3d at 321 (quoting *Commonwealth* v. *DePina*, 73 N.E.3d 221, 231 (Mass. 2017)).  Mr. Andrade contends that the opportunity for cross-examination was inadequate not because of the feigned memory loss but instead due to the prosecutor's questioning technique, which under his strained reading of the common law rule summarily stated in *Judge*[8] could have led defense counsel to believe that the grand jury testimony had not been admitted as substantive evidence.  Defense counsel therefore contends he could not cross-examine the witnesses about their grand jury testimony without himself putting that testimony in the record as substantive evidence.

Mr. Andrade cites to *Smith* v. *Illinois*, 390 U.S. 129, 131 (1968), to support his position that "procedures that shield key

---

[8] Mr. Andrade places more weight on the *Judge* footnote than it was meant to bear.  The footnote is simply a reminder of the unremarkable general proposition that "facts suggested in leading questions which are answered in the negative are not evidence."  *Commonwealth* v. *Judge*, 650 N.E.2d 1242, 1254 n.12 (Mass. 1995).  The more fundamental issue of the technique for presentation of grand jury testimony in this instance — whether "unusual" or "unconventional" under state practice — involved ratification of "suggested" facts.  The technique merely oriented the witness to his prior testimony under oath without suggesting some substantive answer.

facts regarding 'the credibility of a witness' from cross-examination violate the Sixth Amendment."  In that case, the trial court sustained an objection to questions by defense counsel as to a witness's real name and address.  *Smith*, 390 U.S. at 131.  The Supreme Court held this violated the defendant's rights under the Sixth Amendment because cross-examination was essentially meaningless without such a "rudimentary inquiry."  *Id.*  The cross-examination at issue in Mr. Andrade's case is of a completely different nature.

Mr. Andrade's counsel was not prohibited from cross-examining the witnesses; rather, he did so but decided carefully to refrain from asking about the grand jury testimony so as not himself to emphasize it as evidence.  Even without asking about specifics of the grand jury testimony, defense counsel nevertheless asked Mr. Silva, in particular, dozens of questions about the night of the shooting.  Mr. Silva responded substantively to some questions, though to most he simply answered "I do not remember."

Under AEDPA, I may only grant Mr. Andrade's application for habeas relief if the SJC's adjudication of his Sixth Amendment claim, or his Fourteenth Amendment Due Process claim, was contrary to or an unreasonable application of clearly established federal law.  There is no Supreme Court case law on point for the issue of whether the use of embedded leading

questions to introduce prior grand jury testimony undermines a defendant's right to cross-examination when defense counsel does not wish to admit the prior testimony substantively.  This situation is neither a Confrontation Clause nor a due process issue because the witness is available for cross-examination about the underlying event by defendant's counsel in a manner he chooses.  As a result, there is no clearly established federal law to support Mr. Andrade's argument that there was a violation of his Fifth or Sixth Amendment rights respectively of Due Process and Confrontation made applicable to the states by the Fourteenth Amendment to the United States Constitution.  The SJC reasonably applied existing Supreme Court precedent.

## IV. CONCLUSION

For the reasons set forth more fully above, I GRANT Respondent's motion [Dkt. No. 17] for Judgment on the Pleadings and direct the Clerk to enter judgment dismissing this petition.


*/s/ Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE